Exhibit 1

STATE OF NORTH CAROLINA          IN THE OFFICE OF
                                                    ADMINISTRATIVE HEARINGS

COUNTY OF CARTERET                          23-EDC-00557

| | |
|---|---|
| S.D. by parent or guardian R.D., | ) |
|                Petitioner, | ) |
| | ) |
|         v. | )    **SETTLEMENT AGREEMENT** |
| | ) |
| Carteret County Board of Education, | ) |
| | ) |
|           Respondent. | ) |
| | ) |

        THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS ("Agreement") is entered into this 27th day of August, 2023, by and between Rebecca Droberg ("R.D."), individually and on behalf of Samuel Droberg ("S.D."), a minor; ("Petitioner"), Michael Droberg, S.D.'s father, and the Carteret County Board of Education ("Respondent" or "CCS") (collectively, "Parties").

        WHEREAS, S.D., by and through his parent, R.D., filed a petition for a contested case hearing in the Office of Administrative Hearings ("OAH") on February 6, 2023 (23 EDC 00557), an Amended Petition on March 15, 2023, and a Second Amended Petition on June 20, 2023, claiming that the Respondent violated the procedural and substantive requirements of the Individuals with Disabilities Education Act (IDEA), 20 C.F.R. §§ 1400 *et seq.*, and the N.C. special education statutes, N.C. Gen. Stat. §§ 115C-106 *et seq.* and Article 3 of Chapter 150B of the General Statutes;

        WHEREAS, Petitioners maintain that Respondent has violated the requirements of the statutes as set forth above;

        WHEREAS, Respondent contends that it has not violated any federal or state law with respect to the educational program of S.D.;

        WHEREAS, the Petitioner and the Respondent have agreed in good faith to resolve this contested case and to settle the issues in contention to prevent protracted litigation; and

        WHEREAS, the Parties wish to settle all disputes as of the date of this Agreement related to Petitioners' claims against Respondent pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400 *et seq.,* any other Federal or State disability law including, but not limited to the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and Section 504 of the Rehabilitation Act, N.C. special education statutes, and N.C. Gen. Stat. §§115C-106 *et seq.*

        NOW, THEREFORE, in consideration of the mutual promises and releases contained

Exhibit 1

herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1. <u>Behavior Plan and Services</u>.
   a. Board Certified Behavior Analyst (BCBA)
      i. Within five (5) days of the execution of this Agreement, Petitioners agree to provide Respondent with two (2) names of BCBAs for Respondent's review. Within five (5) business days of receiving the names, Respondent shall either agree to one of Petitioners' proposed BCBAs or provide Petitioners a list of a maximum of three (3) names of different BCBAs.
      ii. If Respondent and Petitioners are unable to agree on the independent BCBA, the parties agree to participate in a DPI mediation to resolve the issue. If the selected BCBA is unwilling or unable to contract with Respondent for the duties described below, the parties will repeat the selection process described above.
      iii. As soon as practicable, with the goal of prior to the first day of school but no later than 10 days following the execution of this Agreement, Respondent will contract with the selected independent mutually agreeable BCBA to provide the services outlined in this Agreement.
      iv. The Parties will consult the BCBA for the amount and type of supervision needed. The Parties anticipate such supervision shall include direct observation of S.D. in school settings, review of S.D.'s behavioral data, supervision of the RBT and training of the RBT and Respondent's staff that works with S.D. to implement S.D.'s behavioral goals as described in Paragraph (1)(b)(i) of the Agreement.
      v. Respondent will fund the cost of the BCBA to attend any IEP meetings during the 2023-24 and 2024-25 school years to assist the team in making decisions regarding S.D.'s behavior and communication needs, behavior goals, and strategies.
      vi. The cost expended by Respondent for services secured under Section 1.a. of this Agreement shall not exceed fifteen thousand dollars ($15,000.00) total for the 2023-24 and 2024-25 school years.
         - The Parties understand and agree that in no circumstance will Respondent expend in excess of this amount for the BCBA services in this Agreement, unless Respondent does not have an in-house BCBA to provide the supervision services.
         - The Parties agree the BCBA supervision services may be divided between Respondent's in-house BCBA and the independent BCBA in increasing time allocations as deemed appropriate by the independent BCBA and Respondent to ensure that enough funds remain of the cap to supervise the RBT for the required RBT services in Section 1.b and provide for continuity of services.
         - The Parties agree the FBA in Paragraph 5(b) will not be deducted from the $15,000.00 allocated under this paragraph for BCBA services during the 2023-24 and 2024-25 school years.
   b. Registered Behavior Technician (RBT)

Exhibit 1

i. During the 2023-24 school year:
  - As soon as practicable, with the goal of prior to the first day of school but no later than 10 days following the execution of this Agreement, Respondent agrees to contract with a paraprofessional, trained and experienced as an RBT to provide direct individualized behavior support for S.D., including support for S.D. to master behavioral goals and to target behavior reduction in the areas identified by the BCBA from the Functional Behavior Analysis (FBA) described in Paragraph 5.
  - The RBT will support S.D. during all times that S.D. attends Respondent's schools during the 2023-24 school year.
  - If the RBT is absent for three (3) days or less, then Respondent will ensure that at a minimum another designated adult, who has received the training in Paragraph 4(d)(vi), is in the classroom with S.D.
  - If the RBT is absent for four (4) or more days, then Respondent will either contract with an RBT or provide a trained RBT to be present in the classroom with S.D.
  - The RBT for the 2023-24 school year will be supervised by the BCBA in Paragraph 1(a) except as provided below.

ii. February 2024 IEP meeting through June 2024:
  - Respondent shall continue contracting with an independent, mutually agreeable RBT or, in Respondent's sole discretion, Respondent shall provide for one of Respondent's staff to receive training to become and gain experience as an RBT, prior to working with S.D. to provide direct individualized behavior support for S.D., including support for S.D. to master behavioral goals and to target behavior reduction in the areas identified by the BCBA from the Functional Behavior Analysis (FBA) described in Paragraph 5.
  - If Respondent decides to provide for an in-house RBT to begin working with S.D. after the February 2024 IEP meeting, Respondent will ensure the in-house RBT has had at least two (2) weeks of working alongside the contracted RBT under the supervision of the BCBA.
  - If Respondent decides to opt for the in-house RBT, Respondent will ensure the contracted RBT and the in-house RBT are in attendance at the February 2024 IEP meeting.
  - The in-house RBT shall be supervised by the independent BCBA identified in Paragraph 1(a) or a combination of the independent BCBA and Respondent's in-house BCBA, or at Respondent's discretion if the BCBA has met the not-to-exceed amount identified in Paragraph 1(a)(vi), a different BCBA (including one employed by Respondent).
  - The RBT will support S.D. during all times that S.D. attends Respondent's schools from February 2024 through the end of the 2023-24 school year.
  - If the RBT is absent for three (3) days or less, then Respondent will ensure that at a minimum another designated adult, who has received the training in Paragraph 4(d)(vi), is in the classroom with S.D.

3

Exhibit 1

- If the RBT is absent for four (4) or more days, then Respondent will either contract with an RBT or provide a trained RBT to be present in the classroom with S.D.

iii. During the 2024-25 school year:
- Respondent shall contract with an independent, mutually agreeable RBT or, in Respondent's sole discretion, Respondent shall provide for one of Respondent's staff to receive training to become and gain experience as an RBT, prior to working with S.D. to provide direct individualized behavior support for S.D., including support for S.D. to master behavioral goals and to target behavior reduction in the areas identified by the BCBA from the Functional Behavior Analysis (FBA) described in Paragraph 5.
- The in-house RBT shall be supervised by the independent BCBA identified in Paragraph 1(a) or a combination of the independent BCBA and Respondent's in-house BCBA, or at Respondent's discretion if the BCBA has met the not-to-exceed amount identified in Paragraph 1(a)(vi), a different BCBA (including one employed by Respondent).
- The RBT will support S.D. during all times that S.D. attends Respondent's schools during the 2024-25 school year.
- If the RBT is absent for three (3) days or less, then Respondent will ensure that at a minimum another designated adult, who has received the training in Paragraph 4(d)(vi), is in the classroom with S.D.
- If the RBT is absent for four (4) or more days, then Respondent will either contract with an RBT or provide a trained RBT to be present in the classroom with S.D.

iv. The RBT shall serve as S.D.'s 1:1 aide as provided for in his IEP. The Parties understand and agree that the RBT is in lieu of, not in addition to, the 1:1 aide that S.D. had previously been provided by Respondent.

v. The RBT shall provide behavior support and collect behavioral data but shall not be responsible for instruction related to academic or functional goals other than those described in Paragraphs 1(b)(i)(1) and 1(b)(ii)(1) of the Agreement, except that the RBT may help facilitate instruction provided by S.D.'s special education and general education teachers.

vi. The RBT is responsible for providing behavioral support to S.D., and is to be in close proximity to S.D., and to accompany S.D. outside of the classroom. The RBT will not be assigned to specifically aid any other students.

vii. The RBT shall provide S.D.'s parents and Respondent with a copy of the raw data collected each week.

viii. The Parties shall make reasonable efforts to identify a provider whose rate does not exceed $54 per hour. The hours per week for the RBT shall not exceed 40 hours in any week.

ix. The Parties understand and agree that the RBT is in lieu of, not in addition to, the 1:1 aide that S.D. had previously been provided by Respondent.

4

Exhibit 1

c.  If the RBT or BCBA becomes unwilling or unable to provide behavior services, Respondent will contract with another mutually agreeable BCBA and/or RBT to provide the services described in Paragraphs 1(a)-(b) within thirty (30) calendar days following the same process outlined in Paragraph 1(a)(i)-(ii).

d.  Respondent R.D. and father, M.D., will limit their communication (other than provision of data sheets) with the RBT and BCBA to once per week for no more than thirty (30) minutes with the exceptions of providing any updates or contextual information to the RBT regarding S.D. that could impact his performance at school and communications initiated by the RBT and BCBA. Any and all written communication between the RBT, BCBA, R.D., and/or M.D., or any combination of two or more of those, will be copied to the school system Director of Exceptional Children. The time spent communicating between RBT and/or BCBA, and between either the RBT or the BCBA and either R.D. and/or M.D., will be included in the monetary cap for both the RBT and the BCBA.

e.  Respondent will not attempt to limit the RBT or the BCBA from communicating with R.D. and/or M.D. or from communicating concerns related to S.D.'s educational programming.

f.  It is Respondent's responsibility to inform the RBT and the BCBA of the need to copy the Director of Exceptional Children on written communications.

g.  All staff assigned to work directly with S.D. and all administrators at Bogue Sound Elementary will be trained and certified in CPI prior to the first day of school of the 2023-24 school year.

2.  Transition Plan

a.  Beginning the week of September 5, 2023, S.D. will return to school on a modified day in the general education classroom with RBT support.

b.  S.D. will begin attending on a modified day of at least three (3) hours (starting at the regular start time of the school day) unless the Inclusion Consultant in Paragraph 4 recommends a shorter duration for S.D. to begin his return to school.

c.  The Transition Team described in 2.d. below, including the Inclusion Consultant in Paragraph 4, will develop the specific plan ("Transition Plan") for adding at least thirty (30) minutes to S.D.'s school day each week, unless the Transition Team, which will include the Inclusion Consultant in Paragraph 4, recommends a shorter or longer time for the increase. The first increase shall be scheduled for the week beginning September 11, 2023. Nothing in this agreement shall preclude the Transition Team, by agreement, from decreasing the amount of time S.D. attends school each day if the data and feedback from S.D.'s Transition Team described in paragraph 2(d) supports such a decrease.

d.  Transition Team:

i.  The Parties agree that a Transition Team comprised of R.D. and/or M.D., school staff (to include a maximum of two (2) administrators, S.D.'s general education teacher, and S.D.'s special educator teacher), the Inclusion Consultant, and the BCBA will meet weekly through the end of September 2023 to review data collected and

Exhibit 1

discuss any proposed changes or modifications to S.D.'s behavior plan and Transition Plan based on the data collected by the RBT.

    ii.   The RBT shall also attend if the RBT's data have not been provided to the Transition Team in advance of the meeting or upon request of Petitioners.

    iii.  If the Transition Team is not in agreement regarding any proposed modifications to S.D.'s Transition Plan, the decision shall be deferred to S.D.'s IEP team. No modifications to S.D.'s existing Transition Plan shall be made until S.D.'s IEP team comes to an agreement in accordance with the normal proceedings for IEP Team Decisions.

    iv.  During the month of October 2023, the Parties agree the Transition Team will meet twice a month (bi-weekly) to review data collected and discuss any proposed changes or modifications to S.D.'s behavior plan and Transition Plan based on the data collected by the RBT, unless the Parties mutually agree to change the frequency of the meetings.

    v.   Beginning the month of November 2023, the Parties agree the Transition Team will meet monthly to review data collected and discuss any proposed changes or modifications to S.D.'s behavior plan and Transition Plan, unless the Parties mutually agree to change the frequency of the meetings.

d.     Additionally, the Parties agree to conduct regularly scheduled meetings to review and revise the data collected on S.D.'s behavior and educational goals and determine if there are any changes needed to the BIP developed in Paragraph 6.

e.     Criteria for Temporary Relocation from the General Education classroom. One purpose of this Agreement is to enhance S.D.'s positive behavioral interventions and supports at school. Even so, the Parties agree that in cases where S.D. presents safety concerns or a significant disruption while in the general education classroom, S.D. may be temporarily relocated from the general education classroom until the safety concern or significant disruption is reasonably believed to be eliminated. For safety relocations, S.D. will be treated the same as his non-disabled peers; and likewise for relocations caused by significant disruption of other students' education, the same standards for the conduct of non-disabled, third grade peers (whether cumulative or single acts) would be applied to S.D. Relocation from the classroom would be limited to whatever intervention was necessary to address the behavior with the goal of returning S.D. to the general education classroom as soon as possible. The BCBA and/or RBT will be addressing in real time any unsafe or behaviors disruptive to the education of other students. The special education teacher and general education teacher, in consultation with the RBT, retain the authority to relocate S.D. from the general education classroom if he presents a safety concern or is causing a significant disruption, as described in this paragraph.

f.     The expectation of any relocation in Paragraph 2(e) will be temporary. S.D. will only be relocated for the amount of time needed for S.D. to become regulated and return to the general education classroom that day, unless the incident is at the end of the school day and return is not feasible. Any such incidents necessitating

Exhibit 1

relocation shall be included in the data collected by the RBT. The Parties agree that S.D. may be relocated to an empty classroom or other safe space if necessary to support his regulation.

    i.   Except for relocation per Paragraph 2(e) above, S.D. will remain in the general education classroom subject to review by his IEP team at the IEP meeting to be held in February 2024, as outlined in Paragraph 8, below.

3.  <u>Assignment to Bogue Sound</u>.

    a.  The Parties agree that S.D. will be administratively transferred to Bogue Sound Elementary beginning the 2023-24 school year.

    b.  Respondent agrees to provide S.D. with EC transportation to and from Bogue Sound at no cost to his parents. S.D. will either be accompanied by a monitor or the RBT during his commute to and from school. If the RBT accompanies S.D., this time will not be included in the cap of forty (40) hours per week in Paragraph 1.

    c.  The Parties agree the Inclusion Consultant identified in Paragraph 4 will have the opportunity to meet all general and special education teachers to whom S.D. may be assigned and make recommendations to the principal regarding the teachers the Inclusion Consultant determines to be the best fit for S.D. However, S.D.'s teacher and classroom assignment at Bogue Sound Elementary School remains in the sole discretion of Respondent.

4.  <u>Inclusion Consultant</u>.

    a.  Respondent agrees to contract with a mutually agreeable Inclusion Consultant, to assist S.D.'s IEP team through the end of the 2024-25 school year.

    b.  The Inclusion Consultant currently contracting with Respondent, Sara Jo Soldovieri, may serve in this role if mutually agreed upon. If Ms. Soldvieri is not mutually agreed upon or is unable or unwilling to contract with Respondent, Petitioners agree to provide Respondent with two (2) names of Inclusion Consultants for Respondent's review. Within five (5) business days of receiving the names, Respondent shall either agree to one of Petitioners' proposed consultants or provide Petitioners a list of a maximum of three (3) names of different consultants.

    c.  If Respondent and Petitioners are unable to agree on an Inclusion Consultant, the parties agree to participate in a DPI mediation to resolve the issue, with each party bearing their own expense for mediation. If the selected Inclusion Consultant is unwilling or unable to contract with Respondent for the duties described below, the parties will repeat the selection process described above.

    d.  Respondent agrees to contract with the designated mutually agreeable Inclusion Consultant to do the following:

        i.   Observe S.D. in the school setting. One observation may be conducted virtually if the Inclusion Consultant resides out-of-state.

        ii.  Unless by agreement, there will be no more than six (6) observations total (i.e., three (3) observations each year) during the 2023-24 and 2024-25 school years.

        iii.  Attend all IEP team meetings during the 2023-24 and 2024-25 school years unless the Parties mutually agree the Inclusion Consultant's attendance is

Exhibit 1

not necessary. The Inclusion Consultant may attend IEP team meetings virtually and shall attend IEP team meetings virtually if the inclusion consultant resides out-of-state.

    iv. R.D. shall have the opportunity to speak with the Inclusion Consultant to ask questions or discuss S.D.'s programming up to one (1) hour per month.

    v. The Parties will share any notes or other written reports with R.D. and M.D. provided by the Inclusion Consultant regarding the provision of S.D.'s educational programming by school personnel, excluding feedback to S.D.'s teachers which might be considered confidential personnel information.

    vi. Provide a two (2) hour-training to all school administrators and school personnel assigned to work with S.D. on evidence-based inclusive practices for children with Down syndrome and children with autism. This training shall be provided at the beginning, but no later than the end of the first quarter, of the 2023-24 school year and Respondent shall provide R.D. a copy of any training materials utilized.

  e. The cost expended by Respondent shall not exceed seven thousand five hundred dollars ($7,500.00) for the 2023-24 school year and for the 2024-25 school year, the cost shall not exceed five thousand dollars ($5,000.00). The Parties agree that the BCBA and the Inclusion Consultant may be the same person if mutually agreed upon.

5. <u>Functional Behavior Assessment (FBA).</u>

  a. Respondent agrees to contract with Jennifer Holmes or the mutually agreeable BCBA identified in Paragraph 1(a) to start conducting virtual or in-person observations and interview S.D.'s parent(s), teacher(s), and private and school service providers at public expense of S.D. prior to the start of S.D.'s 2023-24 school year to identify the target behaviors to be addressed through S.D.'s Behavior Intervention Plan (BIP) described in Paragraph 6 and behavior goals in S.D.'s IEP as contemplated in Paragraphs 1(b)(i)(1) and 1(b)(ii)(1).

  b. The BCBA identified in Paragraph 1(a) will conduct an FBA at the public expense, after the 2023-2024 school year has commenced and S.D. has returned to school with RBT support to further develop or modify S.D.'s BIP or behavior goals.

  c. The Parties agree that the FBA in Paragraph 5(a) constitutes the FBA ordered in due process hearing 23-EDC-00557.

6. <u>Behavior Intervention Plan.</u>

  a. No later than August 30, 2023, the Parties shall convene an IEP meeting as contemplated in Paragraph 7. With the direction of the BCBA that initiated the FBA and conducted interviews in Paragraph 5(a), the IEP Team will identify the target behaviors and develop a new BIP, to be revised after the completion of the FBA in Paragraph 5(b).

  b. Respondent shall fund the cost of Jennifer Holmes or the BCBA to attend this meeting, remotely or in person.

  c. After the BCBA conducts the FBA identified in Paragraph 5(b), the Parties shall convene an IEP meeting to amend the BIP within fifteen (15) business days.

  d. Pursuant to Paragraph 1(a)(v), Respondent will provide for the BCBA to attend this

Exhibit 1

meeting, remotely or in person.

7.     <u>IEP Meeting.</u>
   a. No later than August 30, 2023, Respondent shall convene an IEP meeting to conduct S.D.'s annual review.
   b. At the meeting, Respondent will agree to continue the Service Delivery, Placement, and Goals in the December 2022 IEP.
   c. The IEP will be amended to incorporate the modified day and Transition Plan and to revise the BIP.
   d. The IEP team will review the present levels of performance to determine whether they should be revised based on updated information.
   e. The IEP team will reconsider the related services in the December 2022 IEP to determine if they are sufficient, as well as consider the need for specially designed instruction in Adapted PE.

8.     <u>Placement.</u> Respondent agrees the service delivery and location of service delivery in the IEP developed pursuant to Paragraph 7 will not be unilaterally changed prior to February 2024. In February 2024, the IEP team will reconvene and consider the behavioral and academic data taken with fidelity (including data taken by the RBT, BCBA, and the EC teacher) and the input of the Inclusion Consultant to determine if any changes to the IEP are necessary and appropriate.

9.     <u>Compensatory Services and Retention.</u>
   a. As requested by Petitioner, R.D., S.D. shall be retained in third grade for the 2023-2024 school year.
   b. Respondent agrees to provide S.D. with up to 40 hours of compensatory education in accordance with the following requirements.
      - Compensatory education shall not be scheduled until S.D. is able to attend school for a full school day.
      - Once S.D. is attending school for a full school day, the Transition Team shall meet to discuss whether S.D. can tolerate adding an additional hour to his day at least once per week after school for the provision of compensatory education.
      - Compensatory education services may also be provided during the summer of 2023 or 2024.
      - The Transition team shall consider any modifications to S.D.'s compensatory education schedule at the team's regularly scheduled meetings, however, all compensatory education will be delivered in accordance with a schedule mutually agreeable to Petitioner and the EC teacher with whom Respondent contracts to provide these services.
      - Respondent's obligation to provide any compensatory education under this Agreement shall, under no circumstances, extend beyond the 2024-2025 school year. If, at the end of 2024-2025 school year there are remaining hours of compensatory services not yet delivered, the receipt of such hours shall be deemed waived, and Respondent's obligation met.

9

Exhibit 1

- The provision of these services does not constitute an admission by Respondent that any such services are owed.

10.    <u>Attorney's Fees and Costs.</u> In settlement of all outstanding disputes regarding attorney's fees between the Parties, Respondent agrees to pay, and Petitioners agree to accept sixty thousand dollars ($60,000.00). Payment shall be made by check payable to the trust account of Gahagan Paradis, LLC within thirty (30) calendar days of the full execution of this Agreement.

11.    <u>Release of Claims.</u> Petitioners, their heirs, successors, guardians, and assigns, hereby forever discharge and release the Respondent, its board members, administrators, teachers, staff, officers, employees, successors and assigns from any and all allegations, claims, lawsuits, liabilities, demands, actions or causes of action of any kind or character whatsoever, including damages (including compensatory damages), attorneys' fees and costs, whether at law or equity, known or unknown, that have been, could have been or may be brought against Respondent pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400 *et seq.,* any other Federal or State disability law including, but not limited to ADA and Section 504 of the Rehabilitation Act, N.C. special education statutes, and N.C. Gen. Stat. §§115C-106 *et seq.,* which the Petitioners have, may have or may ever had, now or in the past, arising out of or on account of the Petitions filed at OAH Docket No. 23-EDC-00557 through the date of this Agreement. Petitioners also expressly waive any Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400 *et seq.,* any other Federal or State disability law including, but not limited to ADA and Section 504 of the Rehabilitation Act, N.C. special education statutes, and N.C. Gen. Stat. §§115C-106 *et seq.* arising out of the same set of facts as those set forth in the Petitions. This waiver includes any such claims that existed on or before the date of execution of this Agreement which could have been brought at the North Carolina Office of Administrative Hearings.

12.    <u>Voluntary Dismissal of Petition.</u> Within three (3) business days of full execution of Board approval of this Agreement, Petitioners shall file a Notice of Dismissal of the Petitions with the Office of Administrative Hearings at OAH Docket No: 23-EDC-00557, thereby dismissing with prejudice any and all claims raised or that could have been raised in the Petition over which the Office of Administrative Hearings has jurisdiction.

13.    <u>Non-Disparagement.</u> Petitioners and M.D. will not disparage Respondent or any of its current or previous board members, administrators, teachers, staff, officers, employees, successors and assigns or otherwise take any future action which could reasonably be expected to adversely affect the personal or professional reputation of Respondent or any of its board members, administrators, teachers, staff, officers, employees, successors and assigns regarding the claims released in this Agreement. This does not preclude Petitioners and M.D. from participating in any future investigations or otherwise complying with any subpoenas to compel their testimony, or providing factual information, as necessary, to future service providers solely for the purpose of working with S.D. Furthermore, Respondent, to include its current or previous board members, administrators, teachers, staff, officers, employees, successors and assigns, agrees it will not disparage Petitioners and M.D. or otherwise take any future action which could reasonably be expected to adversely affect the personal or professional reputation of Petitioners and M.D. regarding the claims released in this Agreement. Any future changes to Petitioner R.D.'s professional relationship with Respondent, which are made for legitimate, non-pretextual reasons,

Exhibit 1

shall not be considered disparagement under this provision.

14.    No Admission of Fault or Liability. It is agreed and understood by Petitioners and the Respondent that the execution of this Agreement shall not constitute an admission of fault or liability on the part of the Respondent, its members, officers, administrators, employees or agents, or an admission of any specific fact related to the issues raised by the Petition filed at OAH Docket No: 23-EDC-00557.

15.    No Prevailing Party. Neither Petitioner nor Respondent shall be deemed a "prevailing party" for any purpose, including any statutory or contractual claim based upon "prevailing party" status with respect to the Petition filed at OAH Docket No.: 23-EDC-00557.

16.    Confidentiality. Petitioners agree not to disclose the terms of this settlement except that Petitioners may disclose information to the school staff, members of the Carteret County Board of Education, its attorneys, and the North Carolina Department of Public Instruction, for purposes of meeting the terms of this Agreement, or except as allowed or required by law or as necessary to implement this Agreement. All discussions that occurred during mediation, settlement negotiations and the settlement conference process will remain confidential and will not be used as evidence in any subsequent due process hearing or civil proceeding. Petitioners agree that any responses to inquiries or any other comments about the terms of the Agreement by either party shall be limited solely to a statement that the case has been resolved. This provision is not meant to limit the freedom of speech of Petitioners but is meant to only limit disclosure of the terms of the Agreement in exchange for the consideration contained herein. Petitioners agree not to disclose the content of any settlement document, in whatever format, received from the Respondent as part of the above-captioned action. Petitioners may disclose information to a tax professional and attorney, for the purposes of meeting the terms of this Agreement.

17.    Severability. The provisions of this Agreement are severable, and if any part of this Agreement is found to be unenforceable, the other parts shall remain fully valid and enforceable so long as Paragraphs 1 (Behavior Plan and Services), 4 (Inclusion Consultant), 7 (IEP), 8 (Placement), 10 (Attorney's Fees and Costs) and 11 (Release of Claims), and 12 (Voluntary Dismissal of Petition) remain in full effect.

18.    General Terms.

> A. This Agreement is binding upon R.D. for herself, M.D. for himself, and each of them on behalf of S.D., their successors, heirs, guardians, and assigns, and the Respondent, its board members, officers, administrators, employees, successors and assigns.

> B. Respondent's agreement to this Settlement Agreement is provided in good faith as consideration for the complete resolution of the claims in Petition 23-EDC-00557 and is not an admission of fault or liability.

> C. This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina.

Exhibit 1

D. This Agreement is entered into voluntarily by the Parties (including M.D.) and with full knowledge of any potential constitutional, statutory, or other rights each may have. Petitioners waive and assume the risk for any and all claims which exist as of the date of the signing of this Agreement, which could have been brought against Respondent pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400 *et seq.,* any other Federal or State disability law including, but not limited to ADA and Section 504 of the Rehabilitation Act, N.C. special education statutes, and N.C. Gen. Stat. §§115C-106 *et seq.,* which could have been brought at the North Carolina Office of Administrative Hearings, United States Department of Education, or in any State or Federal Court, even if unknown or unsuspected by Petitioners, whether through ignorance, oversight, error, negligence, or otherwise and which, if known, would materially affect Petitioners' decision to enter into this Agreement. Petitioners assume the risk that the facts or law may be other than Petitioners believe.

E. In entering into this Agreement, all Parties have relied upon the advice of their competent attorneys, who are attorneys of their own choice, concerning the legal consequence of this Agreement, and the terms of this Agreement have been explained to the Parties by their respective attorneys, and the Parties agree that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

F. This Agreement has been approved by the Carteret County Board of Education.

G. This Agreement constitutes the entire agreement between the Parties. It supersedes any prior understanding or agreement between them, and there are no representations, arrangements, understandings, or Agreements, oral or written, relating to the subject matter of this Agreement, except those fully expressed herein and in the stipulation of dismissal. No changes, amendments, alterations, modifications, additions, or qualifications to the terms of this Agreement shall be made or be binding unless made in writing and signed by both Parties.

H. This Agreement may be signed by each party's respective duly authorized representative in one or more counterparts, each of which shall constitute one single agreement between the Parties hereto. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy, facsimile) is considered an original.

I. The text of this Agreement is the product of negotiation among the Parties, and their competent counsel and is not to be construed as having been prepared by one party or the other party but shall be construed as if all Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party.

J. If a dispute arises out of or relates to this Agreement, or the breach of

12

Exhibit 1

this Agreement, and if the dispute cannot be settled through informal negotiation, the Parties agree first to try in good faith to settle the dispute through mediation administered by the North Carolina Department of Public Instruction (NCDPI), if available. If mediation is unavailable or if either party is dissatisfied with the outcome of mediation, the Parties may seek enforcement by a state court of competent jurisdiction or in a district court of the United States.

WHEREFORE, the following persons agree to the terms of this Agreement as of the date set forth above.

**FOR PETITIONERS:**

*Rebecca Droberg*
Rebecca Droberg

**STATE OF NORTH CAROLINA COUNTY OF CARTERET:**

On this the 28th day of 2023, personally appeared before me, the said named Rebecca Droberg, known to me to be the person described in and who executed the foregoing instrument and she/he acknowledged that she/he executed the same and being duly sworn by me, made oath that the statements in the foregoing instrument are true.

Anne Mellon
(Printed Name of Notary Public)

_Anne Mellon_                My commission expires: 10/27/2024
(Signature of Notary Public)

I, Anne Mellon, notary public am located in Durham County during this emergency video notarization.

I signed this notarial certificate on August 28, 2023, according to the emergency video notarization requirements contained in G.S. 10B-25.

13

Exhibit 1

**FOR PETITIONERS:**

Michael Droberg

**STATE OF NORTH**
**CAROLINA COUNTY OF**
**CARTERET:**

On this the 28th day of 2023, personally appeared before me, the said named <u>Michael Droberg</u>, known to me to be the person described in and who executed the foregoing instrument and she/he acknowledged that she/he executed the same and being duly sworn by me, made oath that the statements in the foregoing instrument are true.

Anne Mellon
(Printed Name of Notary Public)

_____  My commission expires: 10/27/2024
(Signature of Notary Public)

I, <u>Anne Mellon</u>, notary public am located in Durham County during this emergency video notarization.

I signed this notarial certificate on <u>August 28, 2023</u>, according to the emergency video notarization requirements contained in G.S. 10B-25.

14

Exhibit 1

FOR RESPONDENT

Brittany Wheatly
Board Chair, Carteret County Board of Education

STATE OF NORTH
CAROLINA COUNTY OF
CARTERET:

I, Sarah Tayloe Bulla , a Notary Public of the County and State aforesaid, certified that
Brittany Wheatly personally appeared before me this day and acknowledged
the execution of the foregoing instrument.

WITNESS my hand and official stamp or seal, this the 28th day of
August , 2023.

Notary Public
My Commission Expires: 10.19.2025

16

Case 4:24-cv-00173-BO-RJ    Document 1-1    Filed 12/02/24    Page 15 of 15